IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PENDLETON DIVISION

**RICHARD F. WEAVER, JR.**

        Petitioner,

v.

**BRIGITTE AMSBERRY**,

        Respondent.

Case No. 2:16-cv-02226-MO

OPINION & ORDER

**MOSMAN, J.,**

This case comes before me on Petitioner Richard Weaver's Amended Petition for Writ of Habeas Corpus [ECF 62]. For the reasons given below, I GRANT Weaver's petition.

## BACKGROUND

### I.  Pre-Plea Proceedings

In May 2010, a grand jury indicted Petitioner Richard Weaver on ten counts, including one count of attempted aggravated murder, three counts of robbery in the first degree, and two counts of burglary in the second degree. Ex. 102 [ECF 12-1]. Initially, Weaver was represented by attorney Scott Howell. Ex. 125 [ECF 12-1] at 1.

The state had a strong case against Weaver—physical and eye-witness testimony tied him to the burglaries. *See* Ex. 127 [ECF 12-2] at 4–9 (summarizing investigation); *see also* Ex. 159 [ECF 12-5] at 1–2 (adopting facts set forth in the government's trial memorandum). Weaver also confessed to one of the robberies. Ex. 127 [ECF 12-2]

1 – OPINION & ORDER

Noticing signs of mental illness prior to trial, Howell procured a psychological evaluation for Weaver from Dr. Jerome S. Gordon. Ex. 125 [ECF 12-1] at 1–2. Dr. Gordon diagnosed Weaver with a bipolar disorder and posttraumatic stress disorder (PTSD). Ex. 109 [ECF 12-1] at 6. This led to Weaver's transfer to Oregon State Hospital (OSH), where he was subject to further evaluation. Ex. 127 [ECF 12-2] at 11. These tests concluded that Weaver had "no major mental health disorder" and that he was "able to aid and assist" in his defense. *Id.* (internal quotation marks omitted). One psychiatrist, Dr. Alexander Millkey, found that "there was very strong evidence … that Mr. Weaver was malingering" and that it was "highly likely that he was grossly exaggerating" his mental illness. *Id.* at 12. In the face of these contradictory findings, Dr. Gordon evaluated Weaver again, maintaining his position that Weaver likely suffered from bipolar disorder and PTSD. Ex. 124 [ECF 12-1] at 13. Based on Dr. Gordon's second evaluation, Howell filed a notice of intent to present a diminished capacity defense at trial. Ex. 125 [ECF 12-1] at 1–2. He told Weaver that there would be a "battle of the experts," but continued planning for trial. Ex. 127 [ECF 12-2] at 13.

In July 2011, Howell withdrew as Weaver's attorney. Ex. 127 [ECF 12-2] at 13. The court replaced him with Mark Obert. *Id.* In preparation for trial, Obert reviewed Howell's file on the case, but otherwise did little else. Ex. 159 [ECF 12-5] at 1–2. He did not speak with or subpoena any witnesses, including Dr. Gordon. *Id.* Despite numerous calls from Weaver and his mother, Susan Blair, Ex. 121 [ECF 12-1] at 1–2, Obert met with Weaver at most three times: a brief initial meeting in September 2011, then another brief meeting the week before trial, and a third meeting on the morning of trial on October 24, 2011. *See* Ex. 111 [ECF 12-1]; Ex. 151 [ECF 12-4] at 2; Ex. 156 [ECF 12-4] at 77:5–7. Despite Weaver placing 62 calls to Obert's office, the two

connected on the phone twice and spoke for a combined total of nineteen minutes.[1] Ex. 151 [ECF 12-4] at 4.

## II.   The Plea Deal

On the morning scheduled for trial, Obert, Weaver, and Blair met to discuss plea options. Ex. 146 [ECF 12-4] at 2–3. Obert communicated the state's plea offer for a 25-year sentence and told Weaver that the judge and district attorney did not "want to hear a mental health defense." *Id.*; Ex. 156 [ECF 12-4] at 104:2–4. Weaver rejected the state's plea offer and Obert left the room. Ex. 146 [ECF-4] at 3. Obert returned with the state's counteroffer: it would cap its sentencing recommendation to 25 years and allow Weaver to argue for 18.5 years. *Id.* at 3. Staring down a sentence of up to 40 years if he lost at trial, Weaver acquiesced and pled guilty. *See id.* The court then sentenced Weaver to 25 years' imprisonment. Ex. 127 [ECF 12-2] at 13.

## III.   Post-Conviction Proceedings

In November 2012, Weaver petitioned for postconviction relief in state court. Ex. 105 [ECF 12-1]. In an amended petition, he specified ten grounds for relief. Ex. 106 [ECF 12-1] at 4–7. After conducting a post-conviction trial, the state court denied Weaver's petition. Ex. 159 [ECF 12-5] at 1. Weaver appealed, citing as error the court's denial of one of his grounds for relief under the Sixth and Fourteenth Amendments to the United States Constitution:

> Mr. Obert did not investigate the defense of diminished capacity and he did not prepare [Weaver's] case for trial notwithstanding the fact that Mr. Howell had prepared the case for trial and provided Mr. Obert with his entire file. As a result, Mr. Obert pressured [Weaver] into accepting a plea.

Ex. 160 [ECF 12-5] at 15. The Oregon Court of Appeals affirmed without opinion and the Supreme Court of Oregon denied review. Ex. 162 [ECF 12-5] at 8; Ex. 163 [ECF 12-5].

---

[1] One of those connections may have been with Obert's secretary. Ex. 156 [ECF 12-4] at 105:7–11.

3 – OPINION & ORDER

Weaver filed his petition for habeas corpus in federal court in November 2016, amending it in March 2019. Pet. [ECF 2]; Am. Pet. [ECF 62]. In April 2021, I determined that equitable tolling applied to Weaver's petition and that it was timely. Op. & Order [ECF 100]. I ordered additional briefing on the merits, *id.*, which I address in this opinion.

## LEGAL STANDARD

Under the Antiterrorism and Effective Death Penalty Act (AEDPA), a court cannot grant a writ of habeas corpus unless the petitioner "has exhausted the remedies available in the courts of the State" or no effective state corrective process exists. 28 U.S.C. § 2254(b)(1)(A)–(B). AEDPA also narrows the scope of federal review of state court decisions. When a petitioner seeks relief from a state court judgment that was adjudicated on the merits, a court may grant relief only if the state court adjudication "was contrary to, or involved an unreasonable application of, clearly established Federal law;" or "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.* § 2254(d)(1)–(2).

The "contrary to" and "unreasonable application" prongs of § 2254(d) are distinct. *Williams v. Taylor*, 529 U.S. 362, 404 (2000). A state court acts contrary to federal law when its decision "substantially differ[s]" from relevant Supreme Court precedent. *Id.* at 405. And a state court applies federal law unreasonably when it "identifies the correct governing legal rule…but unreasonably applies it to the facts of the particular state prisoner's case." *Id.* at 407.

The correct governing rule for AEDPA purposes is "clearly established federal law." 28 U.S.C. § 2254(d)(1). Clearly established federal law "refers to 'the holdings, as opposed to the dicta' of the Supreme Court's decisions 'as of the time of the relevant state-

4 – OPINION & ORDER

court decision.'" *Cheney v. Washington*, 614 F.3d 987, 994 (9th Cir. 2010) (quoting *Williams*, 529 U.S. at 412).

As for the second part of § 2254(d), a state court's determination of fact is unreasonable if "clear and convincing evidence" shows that "reasonable minds reviewing the record" could not agree with the trial court's factual determination. *Sifuentes v. Brazelton*, 825 F.3d 506, 517–18 (9th Cir. 2016) (internal quotation marks omitted).

## DISCUSSION

### I.    Procedural Default

Weaver's amended petition raises five grounds for relief. Am Pet. [ECF 62] at 3–6. The state argues that all but a portion of Weaver's grounds for relief have been procedurally defaulted. Resp't's Suppl. Br. on the Merits [ECF 109] at 11–12. Procedural default occurs when a petitioner fails to properly exhaust his remedies in state court and is precluded from doing so by an "independent and adequate state procedural rule." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Federal habeas review of procedurally defaulted claims "is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Id.*

A habeas petitioner procedurally defaults on his claims when he fails to timely present them to a state appellate court. *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999); *Park v. California*, 202 F.3d 1146, 1150–51 (9th Cir. 2000). The state contends that Weaver failed properly to present most of his claims to Oregon appellate courts and has thus defaulted on them. Resp't's Suppl. Br. on the Merits [ECF 109] at 11 (citing *O'Sullivan* 526 U.S. at 848).

Only grounds two and five of Weaver's amended petition relate to the assignment of error that Weaver raised to Oregon appellate courts. *See* Ex. 160 [ECF 12-5] at 15; Am. Pet. [ECF 62]. They do so only in fragments; both grounds go beyond what Weaver properly exhausted. But, piecing together the grounds Weaver raises in his amended petition and the assignment of error that he appealed, Weaver has properly exhausted one core claim: that Obert failed to investigate his diminished capacity defense or otherwise prepare for trial.[2]

Weaver's sole argument against procedural default is an isolated assertion that his "appellate counsel ineffectively omitted" his claim that Obert provided ineffective assistance of counsel due to a conflict of interest. Br. in Supp. of Am. Pet. [ECF 120] at 29. But this is Weaver's first time raising any issue with appellate counsel. *See generally* Am. Pet. [ECF 62]. Moreover, appellate counsel's "fail[ure] to recognize ... a claim, or fail[ure] to raise the claim despite recognizing it, does not constitute cause for a procedural default." *Murray v. Carrier*, 477 U.S. 478, 486 (1986). Thus, Weaver has procedurally defaulted on the grounds for relief presented in his amended petition, with the exception of his claim that Obert's failure to prepare for trial constituted ineffective assistance of counsel.

---

[2] The state argues that Weaver's amendment of his complaint to add Ground Five is improper because the allegation does not relate back. Resp't's Suppl. Br. [ECF 109] at 12–17. But here the state appears to object only to Ground Five's discussion of Obert's conflict of interest, which I have already dismissed as procedurally defaulted. I find that Ground Five's allegations regarding Obert's preparation more generally—that he failed to adequately communicate with Weaver and lied about the judge's acceptance of the diminished capacity defense—do relate back. *See* Am. Pet. [ECF 62] at 6.

6 – OPINION & ORDER

## II. Ineffective Assistance of Counsel

An ineffective assistance of counsel claim under the Sixth Amendment requires the petitioner to meet a two-part test: "the defendant must show (1) counsel's performance was deficient, and (2) the deficient performance prejudiced the defense." *Hardy v. Chappell*, 849 F.3d 803, 818 (9th Cir. 2016) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). In the context of a guilty plea, a petitioner establishes prejudice by showing "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

### A. Deficient Performance

The state court determined that Obert "failed to meet the minimum standards of a competent trial attorney in failing to … arrange for the testimony of Dr. Gordon at trial." Ex. 159 [ECF 12-5] at 4. I agree with the state court as to this point; Obert failed to contact the central witness for Weaver's sole defense at trial. *See Luna v. Cambra*, 306 F.3d 954, 961 (9th Cir. 2002) (failure to subpoena witnesses is deficient performance). However, I find the state court's findings here are incomplete.

Obert's deficient preparation is not limited to his failure to contact Dr. Gordon, but also includes his failure to adequately communicate with Weaver. *See Sanders v. Davis*, __ F.4th __, No. 17-16511, 2022 WL 121338, at *21 (9th Cir. Jan. 13, 2022) (recognizing a duty to "advise [a client] throughout the course of trial preparations"). While an attorney need not obtain his client's "consent to every tactical decision," an attorney nevertheless "has a duty to consult with the client regarding important decisions, including questions of overarching defense strategy." *Florida v. Nixon*, 543 U.S. 175, 187 (2004) (internal

7 – OPINION & ORDER

quotation marks omitted). Thus, an attorney cannot prepare a case without open communication with his client.

A look at the record shows that Obert's communication with Weaver was so sparse as to preclude adequate preparation. Obert never talked with Weaver about trial strategy whatsoever, despite being aware that Weaver wanted to go to trial. *See* Ex. 156 [ECF 12-4] at 61:11–16, 77:11–78:3, 105:12–21. Given the lack of trial preparation, it appears Obert never intended to take the case to trial at all. *See id.* at 79:3–80:2 (Obert admitting he submitted no witness list, spoke to no fact witnesses, and issued no subpoenas). Yet not only did Obert fail to communicate this strategy to his client, he also went one step further: evidence indicates Obert misled Weaver about the status of his case, implying that the judge had excluded his diminished capacity defense. *Id.* at 104:2–4.

The state court discussed none of this important testimony in its findings of fact. Instead, it merely adopted the fact section of the government's pre-trial memorandum. Ex. 159 [ECF 12-5] at 1–2. The trial memorandum contains limited discussion of Obert's involvement in proceedings and few details as to his preparation. *See* Ex. 127 [ECF 12-2] at 13. Though the state court deviated from the state's trial memorandum to find that Obert had not met with Dr. Gordon before trial, it otherwise disregarded the testimony adduced at the post-conviction trial entirely. *See* Ex. 159 [ECF 12-5] at 1–2.

AEDPA requires deference to a state court's credibility determinations, *Sifuentes*, 825 F.3d at 517–18, but it does not require deference where the state court has made no such determination. Accordingly, I find the state court made an "unreasonable determination of the facts" by failing to make any findings as to Obert's sparse and misleading communication with his client. 28 U.S.C. § 2254(d)(2). Thus, the state court

opinion as to Obert's deficient performance deserves no deference. Likewise, the state court's application of those facts is unreasonable and receives no deference. *Id.* § 2254(d)(1). Based on my consideration of the evidence presented at the state proceeding, I find that Obert provided deficient representation to Weaver by failing to make any significant preparations for trial.

### B. Prejudice

While the state court acknowledged Weaver met the deficient performance prong, it denied his petition upon finding he had failed to show prejudice. Ex. 159 [ECF 12-5] at 4. The state court based this finding on two grounds: (1) that Weaver pled guilty without knowing that Dr. Gordon was unavailable to testify; and (2) that Weaver had not shown "a decision to reject the plea offer would have been reasonable under the circumstances." *Id.* I address each ground in turn. Finding both grounds unreasonable, I determine the state court deserves no deference under AEDPA and conduct my own analysis of prejudice.

### i. Weaver's Awareness

Here, the state court found that Weaver had failed to prove prejudice because he pled guilty without knowing that Obert had failed to procure Dr. Gordon to testify at trial. "Thus," the court found, "there is no evidence that Dr. Gordon's absence for trial had any impact on the guilty plea." *Id.* In essence, what Weaver did not know could not have hurt him. The state court's analysis here is an unreasonable application of law for two reasons.[3]

---

[3] Because this involves a question of law and fact, it is difficult to extricate the state court's scant determinations of fact from its applications of those facts to law. However, I find the state court's analysis fails to satisfy either § 2254(d)(1) or § 2254(d)(2), so "the question of which AEDPA standard [I] apply" is purely "academic." *Murray v. Schriro*, 745 F.3d 984, 1001 (9th Cir. 2014) (internal quotation marks omitted).

9 – OPINION & ORDER

First, it takes too narrow a view of Obert's deficient preparation. While Weaver may not have known the exact details of Obert's contact with Dr. Gordon, Weaver was at least aware that—on the morning of trial—he and his attorney had yet to discuss trial strategy. In Weaver's words, he felt "super-stressed out" and "crazy" on the day of the trial because he "hadn't even seen" his attorney and "didn't know what was going on." Ex. 156 [ECF 12-4] at 105:21–23. Having never had a meaningful dialogue with his attorney, Weaver had no idea what kind of trial awaited him. Had Weaver received adequate representation, he likely would have had more confidence in his chances at trial and thus been less likely to plead guilty.[4]

Second, the state court failed to consider Obert's representation to Weaver that the judge did not want to hear a diminished capacity defense. A critical basis for Weaver's decision to plead guilty was his belief that he could not mount the diminished capacity defense that he had worked on with his previous attorney. Ex. 156 [ECF 12-4] at 123:1–7. It makes little sense to find that Weaver was not prejudiced because his attorney distorted the real reason why he could not put on the defense.

The state court arrives at this conclusion through an overly strict view of causation. According to the state court, Weaver must have been aware of Obert's errors to have been prejudiced by them in his decision to plead guilty. Ex. 159 [ECF 12-5] at 4. Yet *Hill* does not require Weaver to show that Obert's ineffectiveness was the direct cause of his guilty plea. Instead, the question here is whether there is a reasonable probability that, but for Obert's errors, Weaver would not have pled guilty. *Hill*, 474 U.S. at 59. The record reveals

---

[4] As I discuss later, this does not mean that more diligent counsel would have given Weaver an optimistic view of his chances at trial.

10 – OPINION & ORDER

a clear causal chain. Because Obert inadequately prepared his case, Dr. Gordon was unavailable. And because Dr. Gordon was unavailable, Obert informed Weaver that he could not put on his diminished capacity defense. Thus, even though Weaver did not know the specific details of Dr. Gordon's unavailability, Obert's failure to procure Dr. Gordon caused Weaver to believe he could not put on his diminished capacity defense. This, in turn, influenced Weaver's decision to plead guilty.

An insufficient survey of the facts and incorrect application of the law taint the state court opinion as to the effect of Weaver's awareness of Obert's poor conduct. As such, I find this portion of the opinion to be unreasonable and not subject to deference under § 2254(d).

### ii.   Reasonableness of Rejecting Plea Offer

Alternatively, the state court found that Weaver "failed to prove that a decision to reject the plea offer would have been reasonable under the circumstances," given that his diminished capacity defense had a "slim" chance of success at trial. Ex. 159 [ECF 12-5] at 4. I find the state court proceeding is undermined by its incomplete review of the facts and thus should not be subject to deference.

To prevail on a claim of ineffective assistance of counsel based on a plea deal, "a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010). This is a highly fact-dependent question. *Williams*, 529 U.S. at 391 ("[T]he *Strickland* test of necessity requires a case-by-case examination of the evidence.") (internal quotation marks omitted). But the state court's findings of facts did not address many key pieces of evidence: that Weaver repeatedly expressed a desire to go to trial; that he pled guilty only

after his attorney told him that he could not go forward with his sole defense; or that Weaver and Obert had never discussed trial strategy.

Moreover, in finding that rejecting the government's plea deal would be unreasonable, the state court omitted any mention of work done by Weaver's previous attorney, Howell. Ex. 159 [ECF 12-5] at 4. Howell had advised Weaver that his diminished capacity defense would give him a chance at trial. Ex. 125 [ECF 12-1]. Indeed, Howell thought enough of the diminished capacity defense to discuss it with Weaver on multiple occasions, procure an expert, obtain two psychiatric evaluations, and prepare a thorough cross-examination of state witnesses. *Id.* at 1–2. This evidence indicates that Weaver was not engaging in a mere flight of fancy in insisting on going to trial. Rather, he appears to have based his decision on significant legwork from his previous attorney.

Instead of discussing the circumstances surrounding Weaver's guilty plea, the state court zeroed in on the facts that Weaver's chances of acquittal were slim and that he benefitted from the plea agreement. But neither of these facts make refusal of a plea deal irrational *per se*. When assessing prejudice in the guilty plea context, courts look beyond the question of whether a defendant would have been better off going to trial. Instead, they look at "special circumstances" specific to the petitioner. *Hill*, 474 U.S. at 60. By failing to address critical facts surrounding Weaver's decision to plead guilty—and basing its opinion on findings of fact that ignored many of those facts entirely—I find the state court opinion was based in unreasonable determinations of fact and applications of law under § 2254(d).

### iii.   Merits Analysis of Prejudice

Because I find the entirety of the state court's analysis of prejudice to be based in unreasonable fact findings and applications of law, I need not defer to the district court's opinion on the issue. *See Hurles v. Ryan*, 752 F.3d 768, 778 (9th Cir. 2014). Moreover, I may refer to Supreme Court cases that postdate the post-conviction proceeding, so long as they involve the application of existing rules rather than the announcement of a new one. *Chaidez v. United States*, 568 U.S. 342, 347–48 (2013).

In determining whether Weaver would have pled guilty but for Obert's errors, it is helpful to imagine what an attorney without Obert's errors would look like. This attorney would have communicated with Weaver throughout the proceedings and secured Dr. Gordon's availability. Given the narrow scope of diminished capacity evidence and the contrary evidence the state was prepared to offer, this attorney also likely would have advised Weaver that his chances of acquittal at trial were low. *See United States v. Pohlot*, 827 F.2d 889, 895 (3d Cir. 1987) (explaining limited scope of diminished capacity evidence); Ex. 125 [ECF 12-1] at 2 (recognizing Weaver had "an uphill battle" if he went to trial). In these circumstances, if Weaver was presented with the same plea offer that he ultimately accepted, is there a "reasonable probability" he would have gone to trial? *Hill*, 474 U.S. at 59.

To answer that question, I first turn to the record. *Lee v. United States*, 137 S. Ct. 1958, 1967 (2017) ("Judges should … look to contemporaneous evidence to substantiate a defendant's expressed preferences.").[5] Weaver put on ample evidence that he was eager to

---

[5] The parties did not brief *Lee* extensively. *See* Br. in Supp. of Pet. [ECF 120] at 18; *see generally* Suppl. Br. on the Merits [ECF 109]. I note that *Lee* discusses a line of cases holding that "a defendant must … show that he would have been better off going to trial" in situations where "the

13 – OPINION & ORDER

bring his case to trial. Testimony from Obert, Weaver, Howell, and Blair demonstrates that Weaver maintained a strong desire to go to trial throughout the proceedings. Ex. 156 [ECF 12-4] at 61:11–16, 122:19–22; Ex. 125 [ECF 12-1] at 1; Ex. 121 [ECF 12-1] at 9. Weaver's actions line up with this desire. He worked with Howell to put together a defense for trial. Ex. 125 [ECF 12-1] at 22. When Obert floated the possibility of a plea deal for 15 years, Weaver declined. Ex. 146 [ECF 12-4] at 2–3. When presented with the state's initial offer of 25 years, he declined as well. *Id.* at 3. Weaver only agreed to plead guilty after Obert—with the assistance of Blair—told Weaver that his sole defense was not viable. Ex. 156 [ECF 12-4] at 123:1–7.

Though the record does not show that Weaver adequately understood the uphill battle he faced at trial, it does indicate that he valued his diminished capacity defense beyond its likelihood of success at trial. In Weaver's view, if he were found guilty at trial after mounting his diminished capacity defense, he would have been sent to OSH to receive psychiatric treatment. *See* Ex. 156 [ECF 12-4] at 114:15–17. In "assessing the respective consequences of a conviction after trial and by plea," *Lee*, 137 S. Ct. at 1966, Weaver could have reasonably concluded that even if his diminished capacity defense did not result in

---

defendant's decision about going to trial turns on his prospects of success and those are affected by the attorney's error." 137 S. Ct. at 1965 (citing *Premo v. Moore*, 562 U.S. 115, 118 (2011); *Hill*, 474 U.S. at 59). In those cases, the Court had to deduce whether discovery of new information—or suppression of old information—would have "led counsel to change his recommendation as to the plea." *Hill*, 474 U.S. at 59. "This assessment … depend[s] in large part on a prediction [of] whether the evidence likely would have changed the outcome of a trial." *Id.* Here, Weaver was aware of the content of the evidence that Obert failed to investigate. Moreover, Weaver had already expressed a desire to proceed to trial against the recommendation of his attorney. Though Obert's deficient representation included a failure to investigate, the record shows that Weaver's decision to go to trial was not based solely in his likelihood of success or his attorney's recommendation. Thus, the discussions in *Premo* and *Hill* that require a showing of a likelihood of success at trial do not apply.

14 – OPINION & ORDER

acquittal at trial, it could have shown his character in a positive light. Such a showcase could have resulted in a sentence that was either lower than what Weaver received from his guilty plea or that prescribed different forms of psychiatric assistance. *See id.* at 1967 ("[W]here we are ... asking what an individual defendant would have done, the possibility of even a highly improbable result may be pertinent to the extent it would have affected his decisionmaking.").

In pleading guilty, Weaver agreed to a maximum sentence of 25 years when conviction at trial could have resulted in a conviction of more than 40 years. Ex. 146 [ECF 12-4] at 3. As Obert stated to Weaver, who was 37 years old at the time of his guilty plea, this translates to a difference between release at 62 and possibly spending the rest of his life in prison. *Id.* Yet Weaver may have reasonably found that release close to retirement age was "similarly dire" to release as an octogenarian. *See Lee*, 137 S. Ct. at 1966. To a man in his shoes, "even the smallest chance of success at trial may look attractive." *Id.* Thus, to Weaver, "throwing a 'Hail Mary' at trial," may have reasonably been preferable to a guarantee of decades in prison. *Id.* at 1967.

Based on Weaver's statements and actions leading up to trial, I find that Weaver would not have pled guilty had he received adequate assistance of counsel. Moreover, in light of Weaver's expressed interest in receiving mental health treatment, his age, his likelihood of success at trial, and the sentence he faced, I cannot say that rejecting the guilty plea would have been irrational. *See id.* at 1969 ("Not everyone in [the defendant's] position would make the choice to reject the plea. But we cannot say it would be irrational to do so."). As a result, I GRANT Weaver's petition for a writ of habeas corpus.

15 – OPINION & ORDER

## CONCLUSION

For the reasons given above, I GRANT Weaver's Amended Petition for Writ of Habeas Corpus [ECF 62].

IT IS SO ORDERED.

DATED this 2d day of February, 2022.

MICHAEL W. MOSMAN
United States District Judge