**Nell Brown**
**Assistant Federal Public Defender**
101 SW Main Street, Suite 1700
Portland, Oregon 97204
Tel:   (503) 326-2123
Fax:   (503) 326-5524
Email:  Nell_Brown@fd.org

**Attorney for Petitioner**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **RICHARD F. WEAVER, JR.** | Case No. 2:16-cv-02226-MO |
| Petitioner, | |
| v. | MOTION FOR RELEASE PENDING APPEAL |
| **BRIGITTE AMSBERRY, Warden,** Two Rivers Correctional Institution | |
| Respondent. | |

Petitioner Richard Weaver, successful habeas petitioner, moves, pursuant to Federal Rule of Appellate Procedure 23(c) and *Hilton v. Braunskill*, 481 U.S. 770 (1987), for release pending the State's appeal of this Court's February 2, 2022, decision and judgment granting his amended petition for writ of habeas corpus, CR 121, 122.  Mr. Weaver opposes the State's request for stay of the judgment only to the extent that the State seeks Mr. Weaver's continued incarceration. Respondent opposes this motion.

## RELEVANT BACKGROUND AND SUMMARY OF ARGUMENT

On February 2, 2022, this Court granted the writ of habeas corpus and ordered that "[Mr.] Weaver's guilty plea in Marion County Circuit Court Case No. 10C42882 is vacated." CR 121, 122. The Court gave the State 90 days from the date of the judgment "to initiate new trial proceedings against Weaver or to release him from custody." *Id.* On February 28, 2022, the State filed a notice of appeal and moved to stay the judgment pending appeal. CR 123, 124.

This Court should order Mr. Weaver released pending appeal and grant the State's motion for a stay as it relates to the retrial, but deny any stay of the order of release. The relevant law creates a "presumption of release from custody" in cases where a district court has granted relief to a habeas petitioner. *Hilton*, 481 U.S. at 774. The State has not overcome that presumption. Under the relevant *Hilton* factors, the State cannot overcome the presumption in favor of release pending appeal because it is unlikely to succeed on appeal. Even if the state had made a showing on the merits, the remaining factors weigh against continued incarceration. Mr. Weaver has a strong release plan to live in a supportive clean and sober community. He has ample community support, and he has demonstrated exceptional post-offense rehabilitation during his incarceration to date. Reasonable conditions of release will both insure Mr. Weaver's appearance for any future court proceedings and protect the public. The State will not be irreparably harmed, so long as retrial is delayed. By contrast, Mr. Weaver risks irreparable harm if he remains in custody pending appeal. Ultimately, even if the Court grants a stay of the retrial order, the State cannot overcome the presumption favoring release because it has not shown a substantial likelihood of success on appeal or a substantial case on the merits, much less that the other factors militate against release so as to overcome the presumption.

## ARGUMENT

Federal Rule of Appellate Procedure 23(c) creates a presumption in favor of release from custody pending an appeal after a district court has granted a writ of habeas corpus. *O'Brien v. O'Laughlin*, 557 U.S. 1301, 1302 (2009); *Hilton*, 481 U.S. at 774 ("Rule 23(c) undoubtedly creates a presumption of release from custody in such cases."). The presumption can be overcome only if the State proves that "the traditional factors regulating the issuance of a stay weigh in favor of granting a stay." *O'Brien*, 557 U.S. at 1302. Those factors are:

> (1) Whether the stay applicant has made a strong showing that he is likely to succeed on the merits;
>
> (2) Whether the applicant will be irreparably injured absent a stay;
>
> (3) Whether issuance of the stay will substantially injure the other parties interested in the proceeding; and
>
> (4) Where the public interest lies.

*Hilton*, 481 U.S. at 776. These factors require an individualized determination in each case. Courts may consider the possibility of flight and any danger to the public, as well as the "State's interest in continuing custody and rehabilitation pending a final determination of the case on appeal[.]" *Id*. at 777. The petitioner's interest in release is "always substantial," but will be strongest where the other factors above are weak. *Id*. For the State to prevail, these factors must "tip the balance" against the presumption of release. *Id*. However, as the Supreme Court has held, the balance will "depend to a large extent" on the State's preliminary merits showing:

> Where the State establishes that it has a strong likelihood of success on appeal, or where, failing that, it can nonetheless demonstrate a substantial case on the merits, continued custody is permissible if the second and fourth factors in the traditional stay analysis militate against release. . . . Where the State's showing on the merits falls below this level, *the preference for release should control*.

*Id.* at 778 (emphasis added; internal citations omitted).

Page 3    MOTION FOR RELEASE PENDING APPEAL

**I.     The State Has Not Demonstrated A Substantial Likelihood Of Success On Appeal.**

In its stay motion, the State indicates that it intends to challenge on appeal this Court's rulings on equitable tolling and on the merits of Mr. Weaver's exhausted ineffective-assistance-of-counsel claim. However, the State's arguments merely reprise the same arguments raised in its previous filings. This Court has already considered and rejected those arguments after exhaustive briefing and an evidentiary hearing. This Court's thorough and thoughtful factual findings and legal conclusions on equitable tolling and on ineffective assistance of counsel, and its ultimate decision granting relief, are amply supported by the record and by binding Ninth Circuit and Supreme Court precedent. CR 100, 121. Therefore, the State has not shown a substantial likelihood of success on appeal.

  **A.     This Court Correctly Rejected The State's Equitable Tolling Arguments Because Mr. Weaver Pursued His Rights Diligently And Was Prevented From Timely Filing By An Extraordinary Circumstance.**

With regard to equitable tolling, the State reprises three previously briefed arguments. None of the arguments demonstrates a likelihood of success on appeal for the same reasons on which this Court relied in rejecting them. First, the State argues that Mr. Weaver did not need his attorney file in order to prepare and file his state post-conviction petition or his federal habeas corpus petition. This Court implicitly rejected this position when the Court agreed with Magistrate Judge Beckerman that Mr. Weaver's trial counsel's withholding his file for a period of ten months was an extraordinary circumstance that constituted an impediment to filing. CR 100, at 3. This position also has been rejected by other courts. *E.g.*, *Espinoza-Matthews v. California*, 432 F.3d 1021, 1027-28 (9th Cir. 2005). Contrary to the State's assertion, Mr. Weaver could not research and file a petition alleging that his trial counsel ineffectively failed to investigate his case and prepare for trial absent receiving a copy of that attorney's file to determine if that claim was correct. Review of the

file is necessary to determine what claims to raise, and a petitioner is not expected to conduct meaningful work on his petition while his attorney is failing to provide him his file.

Second, citing *Randle v. Crawford*, 604 F.3d 1047 (9th Cir. 2010), the State reprises its argument that trial counsel's failure to provide his file to Mr. Weaver *before* the filing deadline for a state post-conviction-relief (PCR) petition could not have caused the delay in filing the federal petition *after* the state proceedings ended. This Court explicitly rejected this argument, distinguishing *Randle* and noting the State's interpretation was incompatible with the Ninth Circuit's decision in *Smith v. Davis*, 953 F.3d 582, 595 (9th Cir. 2020) (en banc). CR 100, at 11-12. This Court found, instead, under the particular circumstances of this case, that the ten-month delay in receiving trial counsel's file "dramatically reduced" the total time left for Mr. Weaver to file his federal habeas corpus petition. *Id.* at 11-12. Counsel's delay left Mr. Weaver only seventeen days on the federal limitations period. Under the circumstances, this period was insufficient for Mr. Weaver to file his federal petition even exercising reasonable diligence. *Id.* The Ninth Circuit is likely to affirm this Court's sound, fact-specific conclusion that "the timing of the extraordinary circumstance does not negate causation where, as here, a petitioner acting with reasonable diligence was left without enough time to file." *Id.* at 12.

In its third argument, the State contends that Mr. Weaver was required to take pre-emptive action during the pendency of his state post-conviction petition, a period of statutory tolling, in order to prove reasonable diligence. This appears to be the heart of the State's case on appeal. The State is unlikely to prevail on this point because this Court's two reasons for rejecting that position are sound. As this Court noted, courts, including the Supreme Court in *Pace v. DiGuglielmo*, 544 U.S. 408 (2005), do not analyze what the petitioner did or did not do during the time state PCR proceedings were pending in assessing reasonable diligence. *Id.* at 6-7. Moreover, there are sound

policy reasons not to require petitioners to work on a protective federal petition where the result of the state PCR process could render a federal habeas petition unnecessary, either through a victory in state court or a decision by a prisoner not to seek further relief. *Id.* This reasoning, grounded in Supreme Court precedent, is likely to be upheld on appeal.

The State takes issue with the Court's findings regarding diligence and causation, asserting that there was no impediment to timely filing because Mr. Weaver could simply have "copi[ed] the previous post-conviction claims into a form habeas corpus petition and fil[ed] it" within the 17 days remaining on the statute of limitations. But that argument ignores this Court's careful review of Ninth Circuit case law, including cases instructing Courts to consider the particular circumstances of the case. It also ignores that the Court held an evidentiary hearing to develop the specific facts necessary to fully evaluate diligence before, during, and after the impediment and the Court's factual finding that Mr. Weaver used time beyond the 17 days to complete tasks *necessary for his petition*. CR 100, at 11. Because this Court correctly held that extraordinary circumstances prevented Mr. Weaver's timely federal filing, despite his exercise of reasonable diligence, the State's procedural argument is unlikely to prevail on appeal.

**B.      This Court Correctly Declined To Defer To The State Court's Prejudice Ruling.**

With regard to the merits, the State argues that this Court should have deferred to the state post-conviction court's conclusion that trial counsel's errors caused no prejudice because Mr. Weaver could not have rationally rejected the plea offer and chosen to proceed to trial. Contrary to the State's position, this Court's analysis of why the state court's findings and conclusions were unreasonable is unlikely to be overturned on appeal. CR 121, at 9-15.

This Court found the state court took too narrow a view of trial counsel's deficient trial preparation. The error was not simply failing to arrange for Dr. Gordon to testify at trial, but it also encompassed the failure to communicate with Mr. Weaver in preparation for trial and affirmatively misrepresenting the reason the requested diminished capacity defense was unavailable. Obert told Mr. Weaver the judge did not "want to hear" the defense when, in reality, Obert was unprepared to present that defense. *Id.* at 10-11. This Court correctly held that the state court unreasonably disregarded the testimony about the scope of the deficient performance in concluding that the errors could not have impacted Mr. Weaver's decision whether to proceed to trial or accept the plea offer. *Id.*

This Court further concluded that the state court failed to address "many key pieces of evidence," in deciding that Weaver could not have rationally rejected the plea offer given the low chance of a trial victory. Those key pieces of evidence included "that Weaver repeatedly expressed a desire to go to trial; that he pled guilty only after his attorney told him that he could not go forward with his sole defense; [and] that Weaver and Obert had never discussed trial strategy." *Id.* at 11. The state court also omitted the fact that Weaver's former attorney had advised him that a diminished capacity defense would give him a chance of success. The former attorney's advice demonstrated that Mr. Weaver's desire to go to trial was not "a mere flight of fancy," but was "based on significant legwork by his prior attorney." *Id.* at 11-12.

The State now argues that the state post-conviction court's "silence" as to the key evidence regarding whether Mr. Weaver could rationally have declined the plea offer "does not indicate that it ignored those facts," and, instead, indicates the state court, implicitly, found that they were insufficient to overcome its own view of the benefits of accepting the plea offer. However, as this Court explained, clearly established Supreme Court law requires courts to look beyond the two

Page 7   MOTION FOR RELEASE PENDING APPEAL

facts that the state court here found controlling—the facts that Mr. Weaver had a "slim" chance of success at trial and benefitted from the plea bargain. CR 121, at 12. Those two factors standing alone cannot "make refusal of a plea deal irrational *per se*." *Id.*

To be sure, the choice of whether to go to trial or whether to waive the right to trial and plead guilty is personal to the defendant. *McCoy v. Louisiana*, 584 U.S. _, 138 S. Ct. 1500 (2018) (citing *Jones v. Barnes*, 463 U. S. 745, 751 (1983)). The applicable prejudice inquiry is whether the defendant, if properly advised, would have opted to go to trial. *Lee v. United States*, 582 U.S. _, 137 S. Ct. 1958, 1965 (2017). The analysis "focuses on a defendant's decision-making," and not "solely on the likelihood of conviction after trial." *Id.* at 1966. The Supreme Court has cautioned against relying "solely on post-hoc" assertions about what a defendant would have done, and directs courts to look to "contemporaneous evidence to substantiate a defendant's expressed preference." *Id.* at 1967. Mr. Weaver's expressed preference was to go to trial and present the defense prepared by his first attorney. In light of the state court's unreasonably narrow view of trial counsel's deficient performance and its unreasonable failure to consider key evidence regarding whether Mr. Weaver could rationally decline the plea offer, this Court correctly declined to defer to the state court's conclusion that the errors were not prejudicial. The State now argues that its own interpretation of the state court's silence, which it treats as unstated factual findings, must be presumed correct unless rebutted by clear and convincing evidence, citing 28 U.S.C. § 2254(e)(1). This argument cannot overcome this Court's sound reasons not to defer to the state court, which are grounded in the state court's failure to heed Supreme Court precedent regarding the facts relevant to the federal constitutional inquiry.

In sum, the points the State now raises—both as to equitable tolling and on the merits of his ineffective assistance of counsel claim—have already been raised in prior briefing and rejected by

this Court. The Court, upon a review of the entire record, made factual findings and legal conclusions that are unlikely to be reversed on appeal. On this basis alone, the State cannot overcome the presumption that Mr. Weaver should be released pending appeal.

II.     **Even If The State Demonstrated A Likelihood Of Success On Appeal, The Other Stay Factors Do Not Support Continued Incarceration.**

Even where the State demonstrates a substantial case on the merits, release is still warranted unless the remaining stay factors militate against release. Here, they do not. The presumption for release is bolstered by Mr. Weaver's rehabilitation in prison combined with his release plan that will assure that he poses no risk of flight or danger and that his release is in the public interest.

To date, Mr. Weaver has served a substantial term, approximately 12.5 years in prison. During his incarceration, Mr. Weaver has bettered himself, taking advantage of programming and participating extensively in Native American traditions and cultural activities. Pet. Ex. A.[1] Mr. Weaver takes medications for his mental health issues and has maintained sobriety, free from alcohol and drugs. Since moving to Oregon State Correctional Institution just over two years ago, Mr. Weaver has been able to work and do more programming. He has worked on the Greenhouse, Garden and Landscape crew and as an orderly and care worker, assisting elderly, disabled, and medically frail inmates within the medical unit, which is a position of trust in which he cares for others. A number of inmates have submitted letters attesting to the fact that Mr. Weaver has a positive attitude, follows rules, and is attentive to the needs of others, always offering to provide help. Pet. Ex. B.

---

[1] While incarcerated in Eastern Oregon from 2014-2020, Mr. Weaver was often in segregated housing, chiefly for his own protection from gangs who threatened him and assaulted him repeatedly, and not as a result of disciplinary infractions on his part. Being in segregated housing severely limited his ability to do programming and to work.

Mr. Weaver has a strong release plan. If released, Mr. Weaver would reside at an Iron Tribe clean and sober living community for persons in recovery. Pet. Ex. C. He requests release only when a bed is available for him at Iron Tribe, or, if the Court so orders, at another clean and sober residence or halfway house, which will provide a structured, clean and sober environment to assist him in his transition from prison to the community. Although Mr. Weaver has cut ties with former associates who are not in recovery, he nevertheless has support in the community if he is released, including through his family and Iron Tribe, and others who have submitted letters of support on his behalf. Pet. Ex D. Mr. Weaver plans to begin a non-profit organization, called Full Circle, to support other Native Americans re-entering the community from prison. A mission statement is attached. Pet. Ex. E.

This Court may, of course, fashion additional conditions, such as supervision by U.S. Pretrial Services, a curfew, or location monitoring, to further insure that Mr. Weaver's release is in the public interest. *See Decker v. Persson*, No. 6:13-CV-1415-ST, 2015 WL 7069662, at *5 (D. Or. Nov. 13, 2015) (finding the Respondent had not met the burden of overcoming the presumption that Petitioner should be released, and imposing release conditions); *see also, e.g.*, *Newman v. Metrish*, 300 Fed. Appx 342, 343-44 (6th Cir. 2008) (describing conditions); *Newman v. Rednour*, 917 F. Supp. 2d 765, 792 (N.D. Ill. 2012) (describing conditions).

### A.   The State Will Not Be Irreparably Harmed By Mr. Weaver's Release.

The second stay factor requires the State to show a probability of irreparable injury if the stay is not granted. *Lair v. Bullock*, 697 F.3d 1200, 1214 (9th Cir. 2012). While the State might be irreparably harmed absent a stay of the retrial order, that question is not at issue because Mr. Weaver agrees to a stay of the retrial order. The State suggests Mr. Weaver poses a flight risk and a danger to the community. However the State offers no evidence that Mr. Weaver "poses an especial flight

risk." *See O'Brien v. O'Laughlin*, 557 U.S. at 1303. Mr. Weaver has neither the means nor the intent to flee. He has no passport and has never been outside the United States. Moreover, the record refutes the State's suggestion that Mr. Weaver has no ties to Oregon and no community support. The State, likewise, points generally to Mr. Weaver's underlying offense and history of drug use and mental health issues to suggest he poses a danger. As described above, Mr. Weaver has used his time in prison to address his substance abuse and mental health issues. He plans, upon release, to remain in recovery and to help others in order to make amends for his past. Mr. Weaver will abide by whatever conditions the Court imposes as reasonably necessary to insure his appearance at future proceedings and to insure he poses no danger to the community. Accordingly, the State's right to appeal will not be hindered in any way by Mr. Weaver's release on appropriate conditions.

      **B.**      **A Stay Of Mr. Weaver's Release Will Substantially Harm Him.**

The third stay factor asks whether the issuance of a stay will "substantially injure the other parties interested in the proceeding." Here, continued incarceration while the State appeals risks irreparably harming Mr. Weaver—perpetuating the very harm that habeas corpus seeks to remedy. *See Ward v. Wolfenbarger*, 340 F. Supp. 2d 773, 778 (E.D. Mich. 2004) (holding that "petitioner would suffer irreparable harm each day that he would remain imprisoned in violation of the U.S. Constitution" and noting that "remedying such harm is the very essence of the writ of habeas corpus"); s*ee also Glover v. United States*, 531 U.S. 198, 203 (2001) ("[A]ny additional amount of actual jail time has Sixth Amendment significance.").

As noted above, Mr. Weaver has already served approximately half of his current twenty-five-year term. This Court has ordered a new trial at which Mr. Weaver must be presumed innocent. According to the Ninth Circuit's website, a "typical" appeal in a civil case is likely to take one to

two years (not including certiorari to the United States Supreme Court).[2]  If Mr. Weaver remains incarcerated during that period, he will serve additional time that he will never get back.  If this Court's decision is upheld and Mr. Weaver is successful at a retrial, he will have lost the additional two years during which the appeal is pending in addition to the years of freedom already lost.  Even if Mr. Weaver is not successful following a retrial, there is a risk that he might overserve a lower-imposed sentence that accounts for the diminished capacity defense that Obert failed to prepare.

Continued incarceration is especially harsh because of exposure to Covid-19 in prison, Mr. Weaver's serious medical concerns that have not been adequately addressed in custody, and the fact that prison staff have repeatedly failed to protect him from gang violence in prison.  With respect to Covid-19, this Court is well aware of the disproportionate impact of the pandemic on incarcerated individuals.  Covid-19 has spread more swiftly and has proven more deadly among incarcerated populations than among non-incarcerated populations.  *Covid-19: Infections Among U.S. Prisons Have Been Triple Those of Other Americans*, N.Y. TIMES (April 10, 2021), https://www.nytimes.com/live/2021/04/10/world/covid-vaccine-coronavirus-cases     (comparing case rates and fatality rates in prison populations with rates in the United States as a whole). Institutional efforts to prevent the spread of Covid-19 have resulted in prison transfers, lengthy lockdowns, isolation, and austere prison conditions.  Suffering from asthma, Mr. Weaver is more susceptible to Covid-19 and, in fact, contracted Covid-19 in prison and continues to suffer effects from so-called "long Covid."  Pet. Ex. F, at 8-16.

---

[2] *See* https://www.ca9.uscourts.gov/content/faq.php (explaining, for a civil appeal, that the appeal process takes approximately 12-20 months from the notice of appeal date or 9-12 months from completion of briefing."). This does not include time for seeking certiorari to the United States Supreme Court. *See* A Reporter's Guide To Applications, p. 16 (*available at* https://www.supremecourt.gov/publicinfo/publicinfo.aspx).

Page 12     MOTION FOR RELEASE PENDING APPEAL

Moreover, Mr. Weaver suffers from several injuries and ailments, including injuries to his back, spine, and neck, as well as to his rotator cuff, wrist, and knees. He also suffers from asthma and digestive tract issues. These serious medical concerns are not being adequately addressed in prison. To date, Mr. Weaver has filed numerous actions seeking effective medical treatment. Last year, Marion County Circuit Court Judge Burton ruled that the ODOC must provide him adequate medical treatment. Pet. Ex. F, at 1-7.[3] Despite Judge Burton's ruling, Mr. Weaver continues to have to file grievances and lawsuits for each necessary treatment. *Id.* Release will enable Mr. Weaver to obtain necessary and appropriate medical care.

Last, ODOC has done a poor job of protecting Mr. Weaver from gang violence. He has been assaulted on multiple occasions and has spent much of his prison time isolated in protective custody due to threatened violence. The assaults are the subject of a Section 1983 lawsuit alleging that the ODOC failed to protect Mr. Weaver from known threats. *See* CR 86, at 65-67.[4]

While Mr. Weaver has been able to productively and safely reside at Oregon State Correctional Institution for the past two years, his medical issues have not been addressed at OSCI. Given these circumstances, the State has already executed a harsh punishment and had ample opportunity to rehabilitate Mr. Weaver. The State's interest in continuing custody is, accordingly, weak, while the risk that Mr. Weaver will be substantially harmed by continued incarceration is high.

---

[3] Mr. Weaver was represented on the Marion County case seeking adequate medical treatment by attorney Tara Herival.

[4] Mr. Weaver is represented in this federal matter by attorney John Burgess.

Page 13    MOTION FOR RELEASE PENDING APPEAL

### C.     The Public Interest Favors Release.

Finally, the public interest favors Mr. Weaver's release pending the State's appeal. Mr. Weaver's strong release plan, combined with his post-offense rehabilitation and appropriate conditions ordered by this Court can assure that Mr. Weaver poses no flight risk or danger. Moreover, the public has no interest in continuing to incarcerate a person whose convictions were the product of constitutional error. To the contrary, the public has a strong interest in protecting constitutional rights, and ensuring that citizens are not "denied of [their] liberty without a trial that meets constitutional standards and observes [their] constitutional rights." *Griffin v. Harrington*, 2013 WL 3873958, at *5 (C.D. Cal. Jan 18, 2013) (collecting cases). Mr. Weaver's continued incarceration will merely undermine faith in a criminal justice system that is already under scrutiny.[5]

## CONCLUSION

For the foregoing reasons, Mr. Weaver respectfully requests that this Court grant his motion for release pending the State's appeal.

Respectfully submitted this 14th day of March, 2022.

*/s/ Nell Brown*
Nell Brown
Attorney for Petitioner

---

[5] Oregon's public defense system has been roundly criticized by independent evaluators in recent years as unconstitutional, including that Oregon's system for funding public defense incentivizes appointed attorneys to do as little work on their client's cases as possible and that the system, as a whole, lacks an adequate number of qualified attorneys. *See* https://sixthamendment.org/6AC/6AC_Oregon_report_2019_withappendix.pdf; https://www.americanbar.org/content/dam/aba/administrative/legal_aid_indigent_defendants/ls-sclaid-or-proj-rept.pdf.